Michael Vertkin
P. O. Box 1533
Kings Beach, CA 96143-1533
Telephone: (415) 203-1116
E-Mail:     mvertkin@gmail.com

*Pro se*: Defendant Michael Vertkin

Gene Vertkin
Sonja Vertkin
325 Calais Drive, Keller  TX 76248
Telephone:  (817) 501-7283
E-Mail:      genevertkin@aol.com

*Pro se*: Defendant Gene Vertkin
*Pro se*: Defendant Sonja Vertkin

United States Courts
Southern District of Texas
FILED

JUN 2 9 2010

David J. Bradley, Clerk of Court

## THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | |
|---|---|
| Anna Feldman Vertkin, M.D, <br> Maria Socorro Ruiz Guevara, R.N. <br><br> Plaintiffs, <br><br> vs. <br><br> Wells Fargo NA, Its Subsidiaries And <br> Assignees, et al. <br><br> Defendants. | ) **Case No:  H-10-1433** <br> ) <br> ) **Defendants Michael Vertkin's** <br> ) **Sonja Vertkin's and Gene Vertkin's** <br> ) <br> ) **Memorandum of Points and Authorities** <br> ) IN SUPPORT OF MOTION TO DISMISS FOR <br> ) LACK OF LEGAL STANDING <br> ) LACK OF JURISDICTION OVER THE SUBJECT MATTER, <br> ) IMPROPER VENUE, RES JUDICATA, COLLATERAL <br> ) ESTOPPEL <br> ) FAILURE TO STATE A CLAIM UPON WHICH RELIEF <br> ) COULD BE GRANTED AND INSUFFICIENCY OF SERVICE <br> ) OF PROCESS <br> ) <br> ) FRCiv.P 12(b)(1), 12(b)(3), 12(b)(6), <br> ) FRCiv.P 12(b)(5) Fed. R. Civ. P. 41(d) <br> ) <br> ) **Complaint Filed:**  April 28, 2010 <br> ) <br> ) Motion hearing date and time :   to be set by <br> ) the Court |

1

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

MOTION TO DISMISS FOR LACK OF LEGAL STANDING, LACK OF JURISDICTION OVER A SUBJECT
MATTER, IMPROPER VENUE AND FORUM NON CONVENIENCE, RES JUDICATA, COLLATERAL
ESTOPPEL, FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED, INSUFFICIENCY OF
SERVICE OF PROCESS

## INTRODUCTION AND BACKGROUND

Defendants would like to apologize to this Court for inartful motion to follow. None of us are lawyers, and Michael and Gene Vertkin, while citizens of USA for 32 years, not native English speakers. Considering our financial circumstances, we have no chose, but to write this motion ourselves.

Plaintiff Anna Vertkin (thereafter, Anna) and defendant Michael Vertkin (thereafter, Michael) were married for more than 30 (thirty) years. On September 26, 2006 Michael filed petition for marriage dissolution Now, almost 4(four) years later, marriage dissolution is final, but property division is not, pending trail in Superior Court of State of California for the County of Marin (thereafter, Marin Court), Case No FL 064242.

At the time of separation Anna was and still is, in control of hundreds of thousands of dollars of the community funds. Exact amounts are not known, since she never provided accounting. She was in possession of family residence at 160 Rose Avenue, Mill Valley, California (thereafter House); the main point of controversy in the instant complaint. Estimated equity of the House, at the time of separation, was between $850,000 and $1,200,000. In secret, Anna transferred all the equity line on the House to the Fidelity Investment Funds, which were a community property, but under Anna's control. On October 26, 2006, just few weeks after she was served with ATRO in marriage dissolution , Anna traveled to Switzerland and transferred all of the Fidelity positions to her secret Swiss bank Account with Credit Agricole (Suisse) SA, Geneva (see ¶ 9, Michael Vertkin's declaration, thereafter Michael's Dlr.).

After returning from Switzerland in November of 2006, Anna used extreme delay tactics in the marriage dissolution case. Anna brought numerous petitions and motions; all of

them were denied or dismissed by the Marin Court. Anna used 7(seven) different law firms in the divorce case, acting as her own attorney in interim. In total, she filed 10 (ten) attorney substitution forms in the marriage dissolution case. Anna filed TRO against Michael, with some incredible accusations ranging from" leaving a loaded gun on her pillow" to mail theft and animal abuse. After almost a year of delay in prosecuting TRO, it was dismissed with prejudice. Unhappy with the family court rulings, Anna filed petition to dismiss presiding family court Judge Hon. Verna Adams. It was denied by independent judicial review for lack of grounds for dismissal.

In August of 2007, Anna filed lawsuit against Michael in United States District Court for Northern District of California, San Francisco Division, and Case No3:07-cv -04471-SC, she accused Michael, among other things, in intercepting her electronic communications and stealing her patient's files. By the time lawsuit was filed, Michael had to act as his own attorney. Anna's needless delays and harassment in the divorce proceedings left Michael out of funds and deeply in debt. In spite of Michael's *pro se* status, all of Anna's allegations were dismissed in April of 2010; only remaining issue in the case is Michael's counterclaim. Anna now is suing attorney representing her in that case in the United States Bankruptcy Court for Northern District of California.

In November 2007, House suffered fire damage; just few months after Anna, in secret and in violation of ATRO, removed Michael from the part of the insurance on the House. James Goldberg, Annals boyfriend, represented himself to the State Farm Insurance Co, as owner representative in the House reconstruction. It was done without permission from Michael, an equal co-owner of the House; James Goldberg received insurance money from the State Farm Insurance Co. Anna deposited insurance checks issued in the name of Michael and Anna Vertkin to Swiss Bank Accounts; Michael's signatures on the checks were **forged**. Anna transferred to the third party all the community possessions from the House, appraised by State Farm Insurance Co. in excess of $450,000. After Hose reconstruction, Anna and Goldberg leased House for 10 years to the non existent company, incorporated in Panama. Subsequently, lease was found sham, null and void by the Bankruptcy Court. Lease payments form subtenants were collected by

1  Anna's boyfriend, James Goldberg and deposited in his personal account. James Goldberg did

2  not pay House mortgage, taxes or insurance.

3  At the mandatory divorce settlement conference in April of 2008, Anna

4  threatened Michael and his divorce attorney RG Long (Long) (an unserved defendant in the

5  instant case) to file for bankruptcy, if Anna's proposal in the divorce settlement was not

6  accepted. Trial for property division in marriage dissolution was scheduled for November, 2008

7  in Marin Court. On October 16, 2008, Anna filed voluntary Chapter 7 bankruptcy petition with

8  United States Bankruptcy Court for Northern District of California, Santa Rosa Division Case

9  No 08-12189(¶3Exh.B, Michael's Dlr.). Anna's Bankruptcy petition stayed divorce proceedings.

10  In addition to filing bankruptcy for herself, Anna forged Michael's name, as a co-debtor on the

11  bankruptcy petition. Michael had to appeal to bankruptcy court to remove himself from Anna's

12  bankruptcy filing. At present Michael is a creditor in Anna's bankruptcy case (¶3, Michael's

13  Dlr.). According to the court appointed Trustee, Anna violated every duty of the debtor: she

14  never set foot in the Bankruptcy Court, in spite of being ordered to appear by the Bankruptcy

15  judge, she did not submit accounting, she did not show up for mandatory examination by the

16  Trustee. When Trustee petition the court to deny Anna's bankruptcy discharge, Anna filed

17  Adversary Proceedings, Case AP 09-1003, against Trustee and some other individuals, including

18  Michael. Case was dismissed by the Bankruptcy Judge. Unwilling to accept the outcome, Anna

19  filed another AP # 10-04032, this time she sued not only Trustee and Michael, but a bankruptcy

20  Judge, and two of her former attorneys, and majority of the defendants in an instant case. The

21  AP# 10-04032 case has almost all the defendants and all of the allegations, as an instant case; in

22  addition Anna accused bankruptcy Judge of treason and suggests that Trustee was involved in

23  the past in a conspiracy to commit murder. Anna tried to withdraw AP# 10-04032 to the District

24  Court in San Francisco; her motion to withdraw was denied on June 15, 2010 by the District

25  Court Judge. Now, AP# 10-04032 is again in front of the Bankruptcy Court. The Bankruptcy

26  Case is still pending. Unwilling to wait for her bankruptcy resolution or AP case outcome, Anna,

27  now joined by Michael's brother's ex-wife, Maria Socorro Ruiz Guevara (thereafter, Guevara),

28  brought this instant lawsuit to Texas. This time in her effort to hurt Michael, Anna and Guevara

4

went after Michael's family, and named among the defendants Michael's brother Gene Vertkin (thereafter, Gene) and sister in law Sonja Vertkin (thereafter, Sonja).

## ARGUMENT AND AUTHORITIES

### I. LACK OF STANDING
FRCiv.P. 12(b)(1), 12(b)(6)

Anna has no standing in instant complaint; this lawsuit should be dismissed, as to all Anna's claims against Michael, Gene and Sonja. Anna has no legal right to file civil lawsuit, outside the bankruptcy proceedings, without approval of the Bankruptcy Court and appointed Trustee. Ninth Circuit Court holds that a motion to dismiss for failure to state claim under Rule 12(b) (6) lies where the complaint reveals on its face that Plaintiff lacks standing.[*Sacks v. Office of Foreign Assets Control* (9th Cir. 2006) 466 F3d 764,771; *Holly Sugar Corp. v. Goshen County Co-op Beet Growers Ass'n* (10th Cir. 1984) 725 F2d 564,567-568]

On October 16, 2008 Anna Vertkin filed voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for Northern District of California, Santa Rosa Division, case No 08-12189 (see ¶ 3, Michael's Dlr.). The Bankruptcy Case is still pending. There is almost to 180 (hundred and eighty) entries on the docket in the bankruptcy proceedings. In addition, there are hundreds of docket entries in the Adversary Proceedings (thereafter, AP), within the bankruptcy case. AP's are filed by both; Anna and the court appointed Trustee, administering Anna's Bankruptcy Case (see ¶3 **exhibit B** and ¶7 **exhibit A,** Michael's Dlr.). Upon filing for bankruptcy Anna's standing was transferred to a court appointed Trustee *In re Eisen*, 31 F.3d 1447, 1451 n.2 (9th Cir.1994). Only serving Trustee, and not debtor, has standing concerning property of the estate. Michael is a creditor in Anna Vertkin's bankruptcy case (see ¶ 3, Michael's Dlr.).

Financial rights arising prepetition against Michael, Gene or Sonja regarding the House, any rights for damages or sanctions are transferred to the Trustee. Anna is, or should be, well aware of her standing, since she already tried to sue multitude of opponents, including Michael, in the United States District Court for Northern District of California and 9th Circuit Appeals Court (see ¶ 7, and **Exh.A**, Michael's Dlr.). All of Anna's lawsuits were dismissed or referred back to the Bankruptcy Court. At the time of this writing, Anna was pleading with United States District Court for Northern District of California "motion for withdrawal of reference" from the Bankruptcy Court, Case No C-10-00775 RS, the only lawsuit listed on the Plaintiffs' petition, as related to the instant complaint. Bankruptcy Trustee and Michael, among others, were opposing withdrawal of reference. Hearing for the "withdrawal" motion was set for July 17[th,] 2010, but it was denied by the Court on June 15th, 2010 on a written argument. Guevara was made aware of Anna's lack of standing with this Court by a certified letter (see ¶ 6, 7, Michael's Dlr.).

In order to commence a lawsuit outside of the Bankruptcy Court debtor has to follow very specific procedure prescribed by the Bankruptcy law: (a) send an application, in writing, to the bankruptcy Trustee assigned to the case, requesting permission to precede with the lawsuit. Such application shall contain merits of the proposed action and assurance that the debtor and the estate will not incur any expenses in perusing such lawsuit; (b) obtain agreement form the bankruptcy Trustee to pursue a lawsuit, provided that lawsuit has merits and will not burden the estate: (c) file a motion with the bankruptcy court, describing proposed lawsuit and verifying that the bankruptcy Trustee supports debtor's desire to pursue the case; (d) serve such motion on **all** of the creditors of the estate, allowing time for objections; (e) obtain bankruptcy court approval of the motion. **None** of the above process was followed by the Plaintiffs, prior to initiation of this lawsuit against Gene and Sonja (see ¶ 5, Michael's Dlr.) or Michael (see ¶ 4, Michael's Dlr.). To initiate a lawsuit against Michael, a creditor in Anna's bankruptcy, debtor (Anna) had to follow all the above procedures; in addition the lawsuit must be an Adversary Proceeding within the bankruptcy case and there is no right to a jury.

Anna's Bankruptcy filing, a month prior to the community property division trial, protected her for the last two years, from facing consequences of her violation of the Court

6

orders and California law in the marriage dissolution case No FL 064242. In effect, Anna seeks all the protections of the Bankruptcy Court and none of the responsibilities attached to it.

By filing this lawsuit Anna, and collaterally Guevara, violated the Bankruptcy law and violated Michael's rights to object within the Bankruptcy Court. Guevara, by interjecting herself in this case, interfered with the administration of Anna's bankruptcy estate and is subject to penalties of the Bankruptcy Court.

Defendants Michael Vertkin, Sonja Vertkin and Gene Vertkin plead with this Court to dismiss aforesaid lawsuit with prejudice under FRCiv.P. 12 (b)(1) and 12(b) (6) for lack of standing. In alternative, if court finds Guevara still has standing with this court, name Anna Vertkin should be stricken from the list of plaintiffs, and all the claims associated with Anna Vertkin to be removed and stricken from the pleadings.

## II. LACK OF JURISDICTION OVER THE SUBJECT MATTER
### FRCiv.P. 12(b)(1) 28 USC 1391

This Court has authority to dismiss this claim for lack of subject matter jurisdiction

Plaintiffs' claim of jurisdiction, based on the diversity of the citizenship, does not withstand scrutiny of allegations asserted in the complaint. Page 7, ¶ 15 of the complaint states that "First Plaintiff in this action resides in Harris County, Texas..." page 6, ¶ 9 and ¶ 10 of the complaint states that defendants Gene and Sonja reside in Tarrant County, Texas. Plaintiff Anna Vertkin and defendants Gene and Sonja Vertkin are citizens of the state of Texas. In order to claim jurisdiction under 28 USC § 1332(a)(1), which is one of prerequisites for an exclusive federal jurisdiction, there has to be **complete** (emphasis added) diversity of citizenship between **all** of the plaintiffs and **all** of the defendants, not a single defendant and plaintiff could be of the same citizenship. Article III, § 2 of the Constitution of the United States gives federal courts jurisdiction over "controversies between citizens of different states", which in the instant case does not exist. Plaintiffs' as a party invoking federal diversity jurisdiction bears the burden of proving the requisite of complete diversity of citizenship, "the court may still insist that the jurisdictional facts be established by a preponderance of evidence," [*McNutt v. General Motors*

*Accept. Corp of Indiana* (1936) 298 US 178,189, 56 S.Ct. 780, 785.] Therefore, diversity jurisdiction claim falls away on the basis of plaintiffs' original pleading.

Defendants could not find any federal question in the allegations of the complaint against Gene or Sonja. The only possible allegation offered against Gene, is simple "garden variety" fraud or forgery. Gene denies any and all such allegations, but even if *arguendo* it were true, complaint can be herd by a Superior Court of competent jurisdiction.

Allegations, if any, against Sonja are entirely unclear form the complaint. The only allegation, which could be possibly inferred from the original pleading, is that Sonja traveled with Gene to California, while Gene was still married to Guevara. Plaintiffs could not possibly infer that it rises to the level of federal question, or any actionable event whatsoever. Plaintiffs' have no grounds for a complaint against Sonja in **any** court; it is especially true within the jurisdiction of the District Court. If it pleases this court, it may well notice that Gene and Guevara were separated at the time of an event. Guevara should be sanctioned for bringing, vengeful, nonexistent, domestic grievance, occurred in Florida 15 years ago, to the District Court in Texas. As a consequence, Guevara is polluting the court system in the great state of Texas with foreign, meritless and frivolous allegations.

Forum shopping is not a proper way to establish a jurisdiction. Remarkably, in their complaint Anna and Guevara acknowledge that they are shopping for a Court. In the complaint on p.21, ¶ 85, they state that they are pleading with this Court, because no Court in California will accept complaint against current or former relatives. This sort of forum shopping is offensive and just stops short of "Court wanted" ad in a newspaper. The plaintiffs' statement is also factually incorrect; Courts in California did accept Anna's complaints against Michael and most of the other defendants in this Case, but rejected all of Anna's arguments, and dismissed or sent back to Bankruptcy Court all of Anna's claims. (¶7, Michael's Dlr.).

Court jurisdiction must be shown affirmatively by the plaintiffs. This Court may consider evidence outside the plaintiffs' pleadings to evaluate the validity of the jurisdictional claim "when the question to be considered the one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it" *Sipping Fin'l Services Corp. v. Dracos*

8

1  (2nd Cir. 1998) 140 F3d 129,131. Because this Court's power to hear the case is at stake, it is not

2  limited considering the allegations of the complaint. It may consider extrinsic evidence; and if

3  evidence is disputed, it may weigh the evidence and determine the facts in order to satisfy itself

4  as to its power to hear the case:" The existence of disputed material facts will not prevent the

5  trail court from evaluating for itself the merits of jurisdictional claims" *Roberts v. Corrothers* (9[th]

6  Cir. 1987) 812 F2d 1173, 1177. There wealth of extrinsic evidence available in this case.

7       On March 7, 2010, Anna filed "Motion to Joint Defendants" in United States District

8  Court for Northern District of California, San Francisco (USDCSF), Case: No3:07-cv -04471-

9  SC, Anna Vertkin v. Michael Vertkin, arguing that USDCSF is a proper jurisdiction for the case

10  (¶11, pp. 4, 5, **Exhibit C**, Michael's Dlr.). Anna was ordered by presiding judge to show cause,

11  why her case should not be dismissed. On May 6, 2010, Anna Vertkin filed "Notice and Motion

12  to Dismiss" her case, arguing that "Additional federal torts, another victim and injurers were

13  discovered and are now in front of the **United States District Court in Texas**"(an instant case,

14  emphasis added), (¶12, p. 1 **Exhibit D**, Michael's Dlr.). Obviously, plaintiffs' assume that the

15  jurisdiction is transposable. They are wrong, the Federal Court jurisdiction not transferable or

16  interchangeable at the whim of the plaintiffs, it has to be established affirmatively. In another

17  example: Michael and R.G. Long (Michael's divorce attorney), the defendants in an instant case,

18  among the multitude of others, were sued by Anna in an Adversary Proceedings AP 09-1003

19  (within Bankruptcy Case No 08-12189), with many "facts" of the instant complaint. At the time

20  Anna argued that bankruptcy court was a proper jurisdiction. Anna's lawsuit was dismissed with

21  prejudice, order entered on March 13, 2009(¶14, **Exhibit F**, Michael's Dlr.). When Anna lost the

22  case, she changed her mind about jurisdiction and filed the motion to withdraw reference to the

23  District Court in Northern California, the motion was herd by Judge Jeffrey S. White, Case 09-

24  00701 JSW, and denied by order entered on August 11, 2009 (¶13, **Exhibit E**, Michael's Dlr.).

25  After two years in the bankruptcy court system, Anna and Guevara know or should have known

26  that the only proper court for Anna's prepetition claims is the Bankruptcy Court for Northern

27  District of California. Anna's claims could only be filed with the approval of the court appointed

28  Trustee, and yet Anna, and now Guevara, keep on bringing repetitive, lawsuits with similar

allegations without authorization. It is certainty that the Trustee would not approve an instant

9

1   lawsuit. Trustee already filed Motion to Deny Anna's "Motion to Withdraw Reference" in the

2   lawsuit with the similar "facts" against some of the same defendants in the District Court in

3   Northern California (¶15, **Exhibit G**, Michael's Dlr.) and Anna's motion was denied (¶13,

4   **Exhibit E**, Michael's Dlr.) "a district court should consider the efficient use of judicial

5   resources, delay and cost to the parties, uniformity of bankruptcy administration, the prevention

6   of forum shopping , and other related factors" *FTC v. First Alliance Mortgage Company (In re*

7   *First Alliance Mortgage Company)*, 282 B.R. 894, 901-902 (C.D. Cal. 2001).

8       Given all the facts stated above, defendants Michael Vertkin, Gene Vertkin and Sonja

9   Vertkin plead with this honorable Court to dismiss aforesaid complaint, with prejudice and

10  without leave to amend for lack of jurisdiction over the subject matter FRCiv.P. 12(b)(1),

    28 USC 1391

11

12

13                      **III. IMPROPER VENUE AND FORUM NON CONVENIENCE**

14                          FRCiv.P. 12 (b)(1), 12(b)(3), 12(b)(6),28 USC 1391

15

16      This chapter of memorandum establishes grounds for dismissal of the plaintiffs'

17  complaint on the grounds of improper venue and forum *non convenience*. Plaintiffs did not, and

18  could not establish venue provisions for their complaint in the United States District Court for

19  Southern District of Texas. This complaint should be dismissed pursuant of FRCiv.P 12(b)(3)

20  and 28 USC § 1406 (a) because, plaintiffs failed to allege any basis whatsoever to satisfy their

21  burden of establishing that the venue is proper in this Court. Plaintiffs have the "obligation to

22  institute the action in the permissible forum" and thus bear "the burden that venue is proper", *in*

23  *re to Freeman v. Fallin,* 254 F. Supp. 2d 52, 56 (D.D.C 2003). Here, in their complaint plaintiffs

24  did not state provisions of USC they rely upon to establish the venue for the selected forum.

25      Plaintiffs' justification for the selection of this venue is based on ¶14, p. 7 of the

26  complaint, where they state that "Office of controller of currency is located in Houston and

27  involved in an investigation of various parties named in this action". Plaintiffs did not inform us

28  how it is related to this specific case. We assume that by "various parties" plaintiffs mean

1    companies named in the complaint, not Michael, Gene or Sonja. Nevertheless, if we take

2    plaintiffs argument to its logical absurd conclusion; any and all lawsuit nationwide against

3    companies, named in this action, should be in this Court. Another hint of venue claim in the text

4    of plaintiffs' complaint consists of mysterious, but incomprehensible line 6 p.13: "Texas, who

5    remained unresponsive". That is it. Plaintiffs even did not enlighten us what was the question to

6    Texas. These defendants doubt that this establishes a minimum contact with the forum state.

7        Federal venue rules are based on 28 USC 1391. In instant case Section 1391(a) does not

8    apply, since it applies to diversity cases. Defendants made *prima facie* showing, as discussed in

9    part II Lack of Jurisdiction of this motion that no complete diversity exists in this case. The only

10   possible venue claim plaintiffs could have, is in a federal question. According to 28 USC

11   1391(b), the venue in a federal question cases, is proper:  (a) where any defendant resides, if **all**

12   defendants reside in the same state; (b) where a **substantial part of events occurred** or

13   **property located** (emphasis added) ; (c) in a district which any defendant may be found, in no

14   **other** district exists where there is venue. Plaintiffs' selection of the venue *prima facie* fails all of

15   these conditions (a) none of the defendants reside in Southern district of Texas and defendants

16   are citizens of different states;   (b) none of the alleged events occur in Texas and property of the

17   controversy, the House, located in Mill Valley, California, some 2000 mi away from Houston,

18   Texas; (c) proper venue exists just seventeen  miles form the property, in San Francisco; the

19   United States District Court for Northern District of California. Just a month ago Anna tried,

20   unsuccessfully, to withdraw case to that court; the Bankruptcy Court: Case No 08-12189, AP #

21   10-04032, with the same allegations, and majority of the same defendants, as in the instant case.

22   Motion to withdraw to USDCSF, Case No C-10-00775, is the only "related" case plaintiffs refer

23   to in instant complaint. Anna's motion was denied on June 15, 2010.

24       There no relationship between allegations of the complaint and the forum state. No part

25   of the events or omissions giving rise to the complaint occurred in Texas. All the events

26   described in the complaint occurred in California, all allegedly injurious acts occurred in

27   California. Plaintiffs, without specific references, allege that defendants violated "California

28   law".

This Court is not only improper venue for the complaint; it is also forum *non conveniens,* under the common law. There are no public or private interests' factors in trying this case in Texas.

Private interests in forum, as defined under the common law, are (a) access to the sources of proof; (b) availability of compulsory possess to compel attendance of witnesses; (c) convenience of voluntary witnesses; (d) difference in substantive law to be applied in unfamiliar forum. None of the described factors are convenient to be tried in Texas: (a) all of the sources of proof are in California; (b) witnesses from California will have to be hauled 2,000 mi across the country to testify about such matters, foreign to Texas, as California construction Codes and Mill Valley local building permit process, etc., (c) it is highly unlikely, that any witnesses, at a great expense of money and time, voluntarily come forward to testify in Texas Court; (d) Michael, having worked in construction design industry for quarter of a century, both in Texas and California, can testify that the laws , especially construction laws and building permit laws, are vastly different between those two states.

Public interests in forum, as defined under the common law, are (a) local interest in having disputes resolved locally; (b) court congestion ; (c) familiarity with the law; (d) jury duty burden on citizens in a jurisdiction having no contact with the dispute. This lawsuit serves no public interests of citizens of Texas. This law suit will only encumber public with the dispute foreign to Texas. Texas has no stake, but burden in prosecuting this lawsuit.

Plaintiffs filed complaint without alleging any plausible basis for venue in this Court. Moreover, because this lawsuit cannot rest on the diversity jurisdiction, and because all alleged events or omissions giving rise to the plaintiffs' claims could not possibly have occurred in Texas, no discovery is needed before this Court dismisses plaintiffs' complaint. *See Mwani v. Bin Laden,* 417 F3d 1, 17 (D.C. Cir. 2005)( upholding  a denial of jurisdiction-related discovery because the court could "not see what facts additional discovery could produce that would affect jurisdictional analysis")(internal quotation marks and citation omitted). In addition plaintiffs' lawsuit is in forum *non conveniens,* for both defendants and citizens of Texas.

This court should dismiss the complaint on the basis of improper venue and forum *non conveniens* under FRCiv.P. 12 (b)(1), 12(b)(3), 12(b)(6)  28 USC 1391

### IV. RES JUDICATA, COLLATERAL ESTOPPEL
Fed.R.Civ.P. 12(b)(6), Fed.R.Civ.P.. 41(d)

This chapter of memorandum establishes grounds for dismissal of the plaintiffs' complaint on the grounds of *Res Judicata* and Collateral Estoppel.

On January 14, 2003 Anna filed a lawsuit, an Adversary Proceedings, in the United States Bankruptcy Court for Northern District of California, Santa Rosa Division Case **AP 09-1003** (within bankruptcy case 08-12189, chapter 7)( ¶ 16, **Exhibit H**, Michael's Dlr.). The lawsuit was dismissed with prejudice by bankruptcy judge Alan Jaroslovsky on March 13, 2009 (¶ 14, **Exhibit F**, Michael's Dlr.). Anna filed motion to "Withdraw Reference" of the dismissed case to the United States District Court for Northern California Case No. C-09-00701, her motion was denied (¶ 15, **Exhibit G**, Michael's Dlr.), Anna filed motion for reconsideration with the same court; the motion was denied again (¶ 13, **Exhibit E**, Michael's Dlr.).

Case **AP 09-1003** had many of the same "facts" as instant case, all of the same causes of action and some of the same defendants. The 72 (seventy two) page complaint, Case **AP 09-1003** (¶ 16, **Exhibit H**, Michael's Dlr.) (thereafter AP), is somewhat disorganized and difficult to follow, as to accepted form of statement of fact. Instead of prescribed causes of action, AP had 31(thirty one) "claims of relief". In aggregate, the complaint had the same facts and claims, as the complaint in front of this Court, and it was dismissed with prejudice  and should not be litigated again," when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose'", *Cromwell v. County of Sac., 94 U.S. 351, 352 (1876).*

In this case, as in AP, Anna's and Guevara's allegations arise from liability creating event involving the house located at 160 Rose Ave. in Mill Valley, California (House). If we examine adjudicated AP complaint ( ¶ 16, **Exhibit H**, Michael's Dlr.) we find "facts" very much like in this complaint : Anna asserts that the House was abandoned (p.25), that there was legitimate lease on the House, but was interfered with , by the Trustee and Michael's divorce attorney RG Long (Long). She insists, without any justification, that House was "hers" (p. 31, 32) (now, in instant complaint, it is Anna's and Guevara's). She accuses Michael, Trustee and Long in conspiracy to sell "her" House to subtenant (p.33) and insists that constitutes RICO Title 42 U.S. Code violation. Anna accuses Long in illegal charging lean (p.38) which constitutes also violation of RICO act. Anna alleges that there was vermin damage to the House, caused by Michael and accuses Michael of being suspect in the causing the fire to the House, while Long attempting to liquidate the House (p. 35). She accuses everybody, including Trustee, in secret, but yet unknown to her, dealings, bribery, embezzlement and self serving enrichment (p.34). She states that Trustee collects rent on the House, but not paying the mortgage (p.39). She accuses Michael, Long and Trustee in "retrieving" property from Anna's estate, argues that Trustee has secret arrangement to sell the House to cash in on Long's illegal lean (p.40). Anna repeats her allegation that Michael abandoned the property in uninhabitable conditions (yet she continued to live there), and there was multiple severe construction defects, caused by Michal negligence (she just realized that after living in the House for 12 years) (p.43). Anna again, in repetition, accuses Michael of arson, but this time she adds new charge; conspiracy to commit murder and she spices it up by assertion, that death by fire was continues theme in couples 30 years marriage, and that Michael "promised" the fire (p.44). Anna accuses Michael in refusing to pay mortgages, insurance and maintenance on the House (back on earth, Anna was ordered by Marin Court to pay all House expenses on two occasions and order is still standing) (p.45). She repeats her allegations that Michael and Long insisted on selling the House, but now she accuses Michael and Long in interfering in House reconstruction after the fire, and illegal seizure of the funds (p.46). Further, Anna insists that Michael is not entitled to "any of real property cause or improvements caused by" Anna and property is not sellable and lease is necessary to avoid bankruptcy (p.47). Anna declares that she "should have allowed property (House)... go into

14

foreclosure, rather than to continue heroic efforts to save this property" (p.48). Anna further

continues in a repetitive manner assert that Michael left property, the House, in "ruined, infested

condition, a disaster", but this time she added that Michael did not paid taxes, on some kind of

secreted earnings (p.53). She asserts that community funds were used for community property

and again asserting that she had to do plumbing, repairs and install lights (p 56). And finally, she

declares "shame and disgrace on this court" and declares that she will not obey the laws of the

bankruptcy court (p.57). It is apparent that "facts" of the AP case are very similar, if not as

organized, as in instant complaint. Anna and Guevara added few defendants, including Michael's

brother Gene and sister in law Sonja and added some new theory of recovery, but main point of

contention is the House and events surrounding its foreclosure. "merely adding some facts,

naming additional defendants or proposing a different theory of recovery will not convert one

cause of action into a second cause of action if both actions involve the same liability-creating

conduct"; *Walworth Co. v. United Steelworkers of America, 443 F. Supp. 349, 351 (W.D. Pa.*

*1978)*;

The Claim Preclusion or *Res Judicata* doctrine is the legal doctrine designed to preserve

judicial resources, to promote finality and closure, and encourage reliance on adjudication by

preventing inconsistent results in different court proceedings. There are four prerequisites for *Res*

*Judicata* (Claim Preclusion): (a)Final judgment in first action is entered;(b)First judgment must

be on merits ;(c)Parties are the same; (d)It applies to any claim that was brought or could have

been brought arising out of the same transaction or occurrence. There is the final Judgment in the

AP case; it was dismissed with prejudice, the Judgment was on merits; it went through several

courts with the same results, upholding bankruptcy court decision. Main parties in the case were

the same.  "[u]nder res judicata, a final judgment on the merits of an action precludes the parties

or their privies from relitigating issues that were or could have been raised in that action";

*Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719 (1948).*  It is impossible to

determine where AP case ends and instant case begins, because majority of the liability creating

events are the same. It is difficult for Michael, Gene and Sonja to determine from instant

complaint, which causes of action directed at them. All "new" allegations existed at the time of

AP and could have, and should have been raised at that time "when a court of competent

15

jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose'", *Cromwell v. County of Sac., 94 U.S. 351, 352 (1876).*

Defendants Michael, Gene and Sonja maintain that the causes of action in instant case are the same, as in AP case, but even *arguendo* if they are different; they are precluded form being litigated by the principle of Collateral Estoppel or Issue Preclusion. "once a court has decided an issue of fact or law necessary to its judgment, that decision ... preclude[s] relitigation of the issue in a suit on a different cause of action involving a party to the first case." *San Remo Hotel v. San Francisco*, 545 U.S. 323 (2005), fn. 16. Collateral Estoppel prevents both plaintiffs from relitigating lawsuit, where issue was already decided, i.e. Guevara is bound by principle of non mutual Collateral Estoppel, not to bring adjudicated issue to the Court. It is not necessary to have mutuality to apply issue preclusion *See In re: Bernhard v. Bank of America* 19 Cal.2d 807, 122 P.2d 892 (1942). In addition, Guevara has further restriction to participate in the claim against Gene; see "Final judgment of dissolution of Marriage" (¶ 3, **Exhibit A**, p.7 ¶ 25, 26 Gene Vertkin's Declaration.) it reads "Each party releases the other from all claims, demands due, debts, rights or **causes of action** (emphasis added) up to the date of this Agreement". Guevara relinquished rights for causes of action against Gene by signing the agreement. By bringing this complaint in this court, Anna and Guevara knew, or should have known that they are violating Fed. R. Civ. P. 41(d), which reads:"If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order".

Both, Anna and Guevara are precluded from raising issues and claims of this complaint. This court should dismiss this complaint with prejudice on the basis of *Res Judicata* and Collateral Estoppel in accordance with FRCiv.P. 12(b)(6) and Fed. R. Civ. P. 41(d),

1
2
## V. FAILURE TO STATE THE CLAIM UPON WHICH RELIEF COULD BE GRANTED
3
### FRCiv.P. 12(b)(6)

4        The court has authority to dismiss this suit for failure to state the claim upon which relief
5   could be granted if the complaint clearly demonstrates that the plaintiffs cannot prove any set of
6   facts which entitle it to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73,104 S.Ct. 2229, 2232
7   (1984); *Doe v. Hillsboro ISD*, 81 F.3d 1395, 1401-02 (5th Cir. 1996)

8        Michael, Gene and Sonja have no ideas which of the stated Causes of Action are directed
9   at them. Anna and Guevara had not given a hint, in the complaint, which specific laws or statues
10  Michael, Gene or Sonja violated. It is not defendants' burden to guess what they accused of.
11  Defendants deny the "facts" of the complain directed at them, but even if true, the allegations do
12  not give rise to any actionable events against Michael, Gene or Sonja. Even if plaintiffs prove
13  each of the allegations, plaintiffs have not set forth the essential elements necessary to state a
14  claim upon which relief can be granted. Courts need not "swallow the plaintiff's invective hook,
15  line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and
16  the like need not be credited." *[Aulson v. Blanchard (1st Cir. 1996) 83 F3d 1, 3]*

17       Plaintiffs have attempted to state eight Causes of action. First, violation of the RICO act.
18  Section 1962(b) makes it unlawful for a person to acquire or maintain an interest in an enterprise
19  through a pattern of racketeering activity.  Plaintiffs did not and cannot allege of this first basic
20  concept of the statue could be used against Michael, Gene or Sonja (¶10, Michael's Dlr., ¶ 2
21  Gene's Dlr.). Therefore, even if plaintiffs prove all the facts alleged in the complaint, they cannot
22  prove the elements necessary to state a claim for RICO statue.

23       Second, violation of the Due Process Clause under Fifth Amendment of United States
24  Constitution.  Fifth amendment reads :"No person shall be held to answer for a capital, or
25  otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in
26  cases arising in the land or naval forces, or in the Militia, when in actual service in time of War
27  or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy
28  of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be

1  deprived of life, liberty, or property, without due process of law; nor shall private property be
2  taken for public use, without just compensation". How this is relates to any stated allegations
3  against Michael, Gene or Sonja is a mystery to these defendants. Therefore, even if plaintiffs
4  prove all the facts alleged in the complaint, they cannot prove the elements necessary to state a
5  claim Due process violation against Michael, Gene or Sonja.

6       Third, is fraud, including forgery, construction fraud, conspiracy to defraud. Plaintiffs did
7  not allege any facts that would constitute fraud, including forgery, construction fraud, and
8  conspiracy to defraud.  Therefore, even if plaintiffs prove all the facts alleged in the complaint,
9  they cannot prove the elements necessary to state a claim of fraud, including forgery,
10  construction fraud, and conspiracy to defraud against Michael, Gene or Sonja.

11       Forth, unfair business practices. Plaintiffs did not allege any facts that would constitute
12  business relations between plaintiffs Anna and Guevara on one side and Michael, Gene or Sonja
13  on other.  Therefore, even if plaintiffs prove all the facts alleged in the complaint, they cannot
14  prove the elements necessary to state a claim of unfair business practices against Michael, Gene
15  or Sonja.

16       Fifth, torturous interference with the contract, Torturous inducement of breach of
17  contract. Unlawful Detainer of the Property. Plaintiffs did not allege any facts that would
18  constitute that Michael, Gene or Sonja interfered with the contract, Torturous inducement of the
19  breach of contract or unlawful detainer of property. Therefore, even if plaintiffs prove all the
20  facts alleged in the complaint, they cannot prove the elements necessary to state a claim for
21  torturous inducement of the breach of contract or unlawful detainer of property against Michael,
22  Gene or Sonja. It should be noticed that plaintiffs alleged contract (lease) was found sham, null
23  and void by the Bankruptcy Court. Anna leased Hose for 10 years (not a year as she and Guevara
24  alleged in their statement of fact) to the fake Panamanian Corporation which did not have
25  address or phone number. Anna's boyfriend, Jim Goldberg was collecting rent from the tenants
26  and depositing money to his private bank account, without paying property's mortgages,
27  insurance or taxes. That was the **real** reason for the House foreclosure.
28

Six, Intentional torts of waste, Trespass, conversion, Intentional infliction of the Severe Emotional distress, Restraint of Trade. Plaintiffs did not allege any facts that would constitute that Michael, Gene or Sonja committed Intentional torts of waste, Trespass, conversion, Intentional infliction of the Severe Emotional distress or Restraint of Trade. Therefore, even if plaintiffs prove all the facts alleged in the complaint, they cannot prove the elements necessary to state a claim for Intentional torts of waste, Trespass, conversion, Intentional infliction of the Severe Emotional distress or Restraint of Trade against Michael, Gene or Sonja.

Seven, Illegal foreclosure and Illegal foreclosure auction, intentional and general negligence, breach of the fiduciary duty. Plaintiffs did not allege any facts that would constitute that Michael, Gene or Sonja committed an Illegal foreclosure and Illegal foreclosure auction, intentional and general negligence, breach of the fiduciary duty. Therefore, even if plaintiffs prove all the facts alleged in the complaint, they cannot prove the elements necessary to state a claim for Illegal foreclosure and Illegal foreclosure auction, intentional and general negligence, breach of the fiduciary duty against Michael, Gene or Sonja.

Eights, Retaliation. Plaintiffs did not allege any facts that would constitute that Michael, Gene or Sonja committed any retaliation. Therefore, even if plaintiffs prove all the facts alleged in the complaint, they cannot prove the elements necessary to state a claim of retaliation against Michael, Gene or Sonja. The court need not accept as true conclusionary allegations or legal characterizations. Nor need it accept *unreasonable* inferences or unwarranted deductions of fact. *[In re Delorean Motor Co.* (6th Cir. 1993) 991 F2d 1236, 1240;

Even, if plaintiffs prove all the facts alleged in the complaint, they cannot prove the elements necessary to state any claim for which relief could be granted  against Michael, Gene or Sonja. This court should dismiss the complaint on the basis Failure to State a Claim upon which relief could be granted, under FRCiv.P. 12(b)(6)

## VI. INSUFFICIENCY OF SERVICE OF PROCESS ( AS TO MICHAEL VERTKIN)

FR Civ. P. 12(b)(5)

Motion to Dismiss for Lack of Jurisdiction over the subject matter, Improper Venue, Res Judicata, Collateral Estoppel, Failure to State a Claim upon which relief could be granted, Insufficiency of Service of Process

1   At the time of this writing Michael Vertkin has not been served with aforesaid complaint

2   (¶ 2, Michael's Dlr.). Anna was informed by Michael in e-mail, dated June 1, 2010, that he has

3   not been served with the complaint and voluntarily provided his current mailing address. There

4   was no answer to e-mail and no service. Anna made it a habit to sue Michael without ever

5   serving him. This lawsuit is the latest example.  Wherefore, lawsuit has to be dismissed for

6   insufficiency of service of process, under FR Civ. P. 12(b)(5)

7

8                                          CONCLUSION

9

10   After reviewing this complaint Michael, Gene and Sonja have no doubts, that this lawsuit

11   is presented for no other purpose, than to harass, cause unnecessary delay, and needlessly

12   increase the cost of litigation. Anna and Guevara are well aware, of Anna's lack of standing with

13   this court, since Anna already attempted to withdraw similar lawsuit to the District court and was

14   denied withdrawal. In addition, complain, mirroring this, is right now in front of the Bankruptcy

15   Court in Northern California. Plaintiffs did not attempt to serve Michael. Even if Michael

16   mailing address was changed within last few months, Anna knows Michael's e-mail address and

17   phone number, but never attempted a contact. Michael voluntarily e-mailed Anna his address on

18   June 1, 2010, but still wasn't served. Nether Anna or Guevara, collaborated with Michael's

19   efforts to confer, as prescribed by LR 7 of this Court. Anna and Guevara tried to mislead this

20   Court by not listing all the related cases (¶ 6, ¶ 7 Michael's Dlr.).Plaintiffs did not make a

21   minimum attempt to declare which of the causes of action directed at these defendants.

22   For almost four years, Anna Vertkin made it a habit, to sue Michael Vertkin in

23   groundless, overlapping, repetitive complaints. In addition to the lawsuits, she filed numerous

24   false reports with the police, Justice Department, Attorney General, FBI, and FINRA, and with

25   some other government agencies Michael has never heard about. Now, she fashioned an "ex-

26   wife club", by joining Ms. Maria Socorro Ruiz Guevara and added Michael's Family to her "to

27   be sued" list. California Courts, understandably, are reluctant to declare *pro se* litigants a

28   vexatious litigant. In this case, she "messed with Texas" and Texas citizens, after reviewing

1   Anna's "suing body of work" this court could and should declare Anna, for what she really

2   become, a vexatious litigant.

3         The combination of the flaws makes this complaint unique candidate for the dismissal

4   with prejudice and without leave to transfer or amend. This complaint does not deserve a second

5   chance in *any* Court.

6

7         WHEREFORE Defendants, Michael Vertkin, Gene Vertkin and Sonja Vertkin move this

8   Honorable Court:

9

10  1.  Enter an Order dismissing the complaint with prejudice, without leave to amend.

11  2.  Declare Anna Vertkin a vexatious litigant

12  3.  Sanction Anna Vertkin under Rule Fed. R. Civ. P. 41(d)

13  4.  Order Plaintiffs to pay Defendants' costs and expenses to attend to this complaint and this

14      motion.

15

16  5.  Order Maria Socorro Ruiz Guevara, to pay penalties, as this court deem just and proper

17      for interfering with the bankruptcy administration.

18  6.  Grant such other and further relief as Court may deem reasonable and just under the

19      circumstances.

20

21

22

23

24                                    Respectfully submitted, June 23, 2010

25

26

27                                    Michael Vertkin

28